IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NEREYDA FRIAS,

          CASE NO.: 6:09-cv-2023-Orl-31KRS

    Plaintiff,

vs.

JERRY L. DEMINGS in his capacity as Sheriff
of Orange County, and GERALD CAVIS, Orange
County Sheriff Deputy;

    Defendants.
_____/

Motion to Dismiss Plaintiff's Amended Complaint
by Defendant Jerry L. Demings

Defendant, Jerry L. Demings, in his official capacity as Sheriff of Orange County, Florida, moves to dismiss the Plaintiff's amended complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6) and 7(b).

Grounds for motion

1.    Sheriff Demings moves to dismiss the Plaintiff's 42 U.S.C. 1983 claims for the alleged violation of Article I Section 12 of the Florida Constitution and for the alleged violation of Florida's Knock and Announce Statute on the basis that 42 U.S.C. 1983 does not provide for the vindication of state law, and on the basis that an alleged violation of the Florida Constitution does not give rise to a civil cause of action.

2.    Sheriff Demings moves to dismiss the state law intentional infliction of emotional distress claim on the basis that he is entitled to statutory sovereign immunity and common law sovereign immunity.

3. Sheriff Demings moves to dismiss the Plaintiff's prayer for punitive damages because Sheriff Demings cannot be liable for punitive damages as a matter of federal or state law.

Memorandum of Law

*Standard of Review*

4. In evaluating the sufficiency of an amended complaint, the court must accept "well pleaded facts as true and resolve them in the light most favorable to the plaintiff."[1] However, if the plaintiff can prove no set of facts that would entitle him to relief, then the defendant is entitled to a dismissal for failure to state a claim. Although the plaintiff is not held to a very high standard on a Rule 12(b)(6) motion, the plaintiff is still required to "allege some specific factual bases for those conclusions or face dismissal" of the claim.[2]

*No Cause of Action for alleged violation of Florida Constitution or state law*

5. The Plaintiff apparently seeks to state a 42 U.S.C. § 1983 claim for the alleged violation of the Florida Constitution. However, section 1983 does not create a remedy for wrongs allegedly committed in violation of state law.[3] Also, Florida law does not recognize an independent cause of action for deprivations of provisions of the Florida constitution. As noted

---

[1] Beck v. Deloitte & Touche, 144 F.3d 732, 735 (11th Cir. 1998).

[2] Jackson v. Bellsouth, 372 F.3d 1250, 1263 (11th Cir. 2004).

[3] Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002)("Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right."); Champlin v. CCA, 208 U.S.Dist.LEXIS 48994 (N.D.Fla. 2008).

by Justice Sharp from the Fifth District Court of Appeal: "Unlike the parallel United States Constitutional provisions, there are no implementing state statutes like 42 U.S.C. 1983 to breath life into the state constitutional provisions."[4] Thus, an alleged violation of the Florida Constitution does not give rise to a cause of action.[5] Therefore, Defendant is entitled to judgment as a matter of law on the Plaintiff's section 1983 claim for the alleged violation of the Florida constitution.

*The Sheriff is entitled to statutory sovereign immunity*

6. The intentional infliction of emotional distress claim should be dismissed as a matter of law because Sheriff Demings is entitled to the sovereign immunity protection afforded to him by Florida Statute §768.28(9)(a), which provides as follows:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in court or named as a party defendant in any action or any injury or damage suffered as a result of any acts, event, admission of actions in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. . . . The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of

---

[4] Fernez v. Burns, 760 So.2d 1144, 1146 (Fla. 5th DCA 2000); Resha v. Tucker, 670 So. 2d 56, 59 (Fla. 1996)(the Florida Supreme Court rejected a claim for violation of right to privacy under the Florida Constitution); Garcia v. Reyes, 697 So.2d 549, 550 (Fla. 4th DCA 1997)(there is no support for the availability of money damages based on a violation of the right to due process as guaranteed by the Florida constitution).

[5] Lovins v. Lee, 53 F.3d 1208, 1210 (11th Cir. 1995).

which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton an willful disregard of human rights, safety, or property the state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside of the course and scope of her of his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.[6]

The Florida Supreme Court has applied the clear language of the above cited statute, and has held as follows:

> We thus conclude that the intent behind the 1980 amendments was to extend the veil of sovereign immunity to the specified governmental employees when they are acting within the scope of employment, with employing agency alone remaining liable up to the limits provided by statute.  That veil is lifted only where the employee's act fell outside the scope of employment, in which event sovereign immunity then shields the employing agency from liability.  *In any given situation, either the agency can be held liable under Florida law, or the employee, but not both.*[7]

Therefore, because the Plaintiff has alleged that "the conduct of the defendants was willful, malicious, oppressive and/or reckless,"[8] Sheriff Demings is shielded from liability and is protected by the grant of immunity afforded by Florida statute 768.28(9)(a).

*The Sheriff is entitled to common law sovereign immunity*

7.     The intentional infliction of emotional distress claim should also be dismissed because the Plaintiff failed to plead sufficient facts to overcome the Sheriff's entitlement to

---

[6] Fla. Stat. 768.28(9)(a) (2008).

[7] McGhee v. Volusia County, 679 So.2d 729, 733 (Fla. 1996)(italics added for emphasis).

[8] Amended Complaint, paragraph 19.

sovereign immunity. In order to determine whether the Sheriff is entitled to sovereign immunity, it is necessary to ascertain the character of the allegedly negligent governmental act or omission—basic judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity.[9] As noted by the appellate court, the Florida Supreme Court's opinion in Trianon Park Condominium Association v. City of Hialeah,[10] is the principal authority when determining whether the government is entitled to sovereign immunity for its decision-making process. To clarify the concept of governmental tort liability, the court expressed the parameters of governmental responsibility within this framework:

> There is no governmental tort liability for the action or inaction of governmental officers or employees in carrying out the discretionary governmental functions described in categories I and II, because there has never been a common law duty of care with respect to these legislative, executive, and police power functions, and the statutory waiver of sovereign immunity did not create a new duty of care.[11]

8. The Florida Supreme Court gave great deference to creating sovereign immunity for law enforcement activities, which can be characterized as discretionary police power functions. The court determined that "certain discretionary functions of government are inherent in the act of governing and are immune from suit."[12] In order to better clarify the concept of governmental tort liability, the Florida Supreme Court placed governmental functions and activities

---

[9] Pollock, 882 So.2d at 933.

[10] 468 So.2d 912 (Fla. 1985).

[11] Trianon, 468 So. 2d at 918.

[12] Id. at 918.

into four categories: 1) legislative; 2) enforcement of laws and protection of public safety; 3) capital improvements; and 4) providing professional, educational, and general services to the citizens. Clearly the Plaintiff is attempting to challenge the Sheriff's decisions with regard to the adoption and implementation of policies within the Sheriff's office, which falls within category 2, that is, enforcement of laws and protection of public safety. Such decisions are discretionary functions of government that are immune from suit, and the Sheriff owes no duty to the Plaintiff with regard to the implementation of these discretionary powers. As the Florida Supreme Court noted:

> how a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of governance, for which there never has been a common law duty of care. This discretionary power to enforce compliance with the law, as well as the authority to protect the public safety, is most notably reflected in the discretionary power given to judges, prosecutors, arresting officers, and other law enforcement officials, as well as the discretionary authority given fire protection agencies to suppress fires.[13]

9. The Florida Supreme Court has delineated four factors to assist in distinguishing between what constitutes discretionary functions as opposed to operational functions:

> 1. Does the challenged act or omission, or decision necessarily involve a basic government policy, program, or objective?
>
> 2. Is the question, act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?
>
> 3. Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?

---

[13] Trianon Park, 468 So. 2d at 919.

4. Does the governmental agency involved possess through requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?[14]

10. This test has been applied in law enforcement and public protection contexts where it has been held that the governmental entity was immune from liability. For example, in <u>Maybin v. Thompson</u>,[15] a false arrest plaintiff brought a negligent training and supervision claim against the City of Ft. Myers. In affirming summary judgment for the City, the Second District Court of Appeal stated:

> In count III the complaint alleged that the city was liable for the negligent hiring and training of Officer Thompson. The trial court granted the city's motion for summary judgment and found as a matter of law that the doctrine of sovereign immunity was a bar to Maybin's complaint against the city. . . . We affirm the judgment as to count III (negligence) because the employment of police officers is generally considered to be an immune policy-making activity and, further, there were no facts in Maybin's complaint to sustain the allegations of negligence.[16]

11. In <u>City of Daytona Beach v. Palmer</u>,[17] the court refused to allow a citizen to state a cause of action against the fire department for negligent discretionary acts in fighting a fire. As the court noted:

> the decision to fight a particular fire, how to rescue victims in a fire, or what and how much equipment to send to a fire, are discretionary judgmental decisions which are inherent in this public safety function of fire protection. . . . to hold a city a liable for the negligent decisions of its firefighters would require a judge or jury to second firefighters in making these decisions and would place the judicial branch in a

---

[14] <u>Commercial Carrier v. Indian River County</u>, 371 So.2d 1010, 1019 (Fla. 1979).

[15] <u>Maybin v. Thompson</u>, 514 So.2d 1129 (Fla. 2d DCA 1987)

[16] <u>Maybin</u>, 514 So.2d at 1130.

[17] <u>City of Daytona Beach v. Palmer</u>, 469 So. 2d 121 (Fla. 1985)

supervisory role over basic executive branch, public protection functions in violation of the separation of powers doctrine.[18]

12. In Wong v. City of Miami,[19] the Florida Supreme Court stated:

While sovereign immunity is a salient issue here, we ought not to lose sight of the fact that inherent in the right to exercise police powers, is the right to determine strategy and tactics for the deployment of those powers. . . . [t]he sovereign authorities ought to be left free to exercise their discretion and chose the tactics deemed appropriate without possible allegations of negligence. Here officials thought it best to withdraw their officers. Who can say whether or not the damage sustained by the petitioners would have been more widespread if the officers had stayed, and because of a resulting confrontation, the situation had escalated with greater violence than could have been controlled with the resources immediately at hand? If that had been the case, couldn't petitioners allege just as well *that* course of action was negligent?[20]

13. In Ellmer v. City of St. Petersburg,[21] the Florida Supreme Court held that a robbery victim could not recover on the theory that police failed to warn of danger in an area where riot conditions existed. As the court noted:

Applying [the Wong test] to the facts at hand, we believe that the "negligence" attributed to the city in this case, falls within the scope of its discretionary planning level function. The alleged failure to warn of riot conditions was but an aspect of the larger responsibility of providing police protection from the riot and restoring law and order to the city streets. Just as the city's handling of a riot is an activity involving basic planning decisions, so too any attempts to warn of riot conditions must involve planning with respect to how, when, and by what means it is to be accomplished so as to avoid causing public panic and to prevent confrontations with rioters which might exacerbate the situation. **Decisions are also necessary concerning how to employ available manpower to effectuate the warnings while**

---

[18] Id. at 23.

[19] 237 So. 2d 132 (Fla. 1970).

[20] Id. at 134.

[21] 378 So. 2d 825 (Fla. 2d DCA 1979).

**at the same time maintain sufficient force to deal directly with the rioters and contain the spread of the riot to other areas of the community.**

We reject the idea that any planning level function must occur back at headquarters and that any decision made on the scene must necessarily be operational. Sometimes, only persons in the field can make effective plans.[22]

14. In Brock v. City of Zephyrhills, the Eleventh Circuit Court of Appeals held: "The acts of obtaining and executing a warrant for an arrest and *performing a search of the vehicle and residence qualify as discretionary functions of law enforcement officers.*"[23]

15. In City of Daytona Beach v. Palmer,[24] the Florida Supreme Court held that decisions on how to properly fight a particular fire, rescue victims in a fire, or what and how much equipment to send to fire, are discretionary judgment decisions which are inherent in the public safety function of fire protection. "To hold a city liable for negligent decisions of its fire-fighters would require a judge or jury to second-guess fire-fighters in making these decisions and would place the judicial branch in a supervisory role over basic executive branch, public protection functions in violation of the separation of powers doctrine."[25] Deciding how and in what manner laws are enforced in most instances are judgmental decisions of the executive branch and the judicial branch should not trespass into the decisional process.[26]

---

[22] Id. at 827.

[23] Brock v. City of Zephyrhills, 232 Fed. Appx. 925, 927, 928 (11th Cir. 2007).

[24] 469 So.2d 121, 123 (Fla. 1985).

[25] Id.

[26] Carter v. City of Stuart, 468 So.2d 955 (Fla. 1985).

16.     Also, in <u>Borges v. City of West Palm Beach</u>,[27] claims for negligent training, supervision and retention of officers employed by the City of West Palm were dismissed based on the doctrine of sovereign immunity. Suit was filed against the City of West Palm based on allegations that Plaintiff was falsely arrested and charged with solicitation of a prostitute and his name was subsequently published in the newspaper per city policy. In dismissing Plaintiff's Complaint for training, supervision and retention of officers, the Court held that the negligence allegations were in essence "complaints about the strategies implemented by the city in its John Sting operations." Therefore, in the opinion of the Court, nothing could be more "discretionary" within the meaning of Florida law.[28]

17.     In this case, Deputy Cavis' discretionary decisions regarding how to conduct an investigation and when and how to make an arrest are not subject to review as a negligence claim under state tort law because they are protected by sovereign immunity, and the Sheriff is entitled to sovereign immunity.

*The Plaintiff's prayer for punitive damages against the Sheriff should be dismissed*

18.     The Plaintiff seeks to recover punitive damages against Sheriff Demings in his official capacity as Sheriff.[29] However, the punitive damages claim should be dismissed as a

---

[27] 1994 WL 397301 (S.D. Fla. 1994).

[28] <u>Miami-Dade v. Fuente</u>, 949 So.2.d 1101 (Fla. 3rd DCA 2007) (decision by officer made at scene of burglar alarm call did not give rise to a common law duty of care and barred by sovereign immunity).

[29] Amended Complaint, paragraph 19.

matter of law because the Sheriff is immune from punitive damages claims under federal law.[30] The Sheriff is also immune from punitive damages under state law because the Sheriff is a state office holder elected pursuant to Article VIII of the Florida Constitution.[31]

19. For all of the foregoing reasons, Defendant, Jerry Demings, in his official capacity as Sheriff of Orange County, Florida respectfully requests that this Court enter an order dismissing the Plaintiff's amended complaint.

*s/ Ian D. Forsythe*
Ian D. Forsythe, Esquire
Fla. Bar No. 054925
Hilyard, Bogan, & Palmer, P.A.
Post Office Box 4973
Orlando, Florida 32802-4973
Telephone (407) 425-4251
Facsimile  (407) 841-8431
Iforsythe@hilyardlawfirm.com
Attorneys for Defendant, Jerry Demings
in his capacity as Sheriff of Orange County

Certificate of Service

I certify that a copy of this document has been electronically filed with the Clerk of the Court this 16th day of December, 2009, by using the CM/ECF system which will send a notice of electronic filing to: Charles E. Taylor, Jr., Esquire, Law Offices of Charles E. Taylor, Jr., Esquire, P.A., 18 West Pine Street, Orlando, Florida  32801.

*s/ Ian D. Forsythe*

---

[30] Fact Concerts v. City of Newport Beach, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762 (1981).

[31] Fla. Stat. 768.28(5); Beard v. Hambrick, 396 So.2d 708 (Fla. 1981).