**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**NEREYDA FRIAS,**

        **Plaintiff,**

**-vs-**                                                                    **Case No. 6:09-cv-2023-Orl-31KRS**

**JERRY L. DEMINGS in his capacity as Sheriff of Orange County and GERALD CAVIS, Orange County Sheriff Deputy,**

        **Defendants.**

## ORDER

This cause comes before the Court without oral argument on a Motion for Summary Judgment (Doc. 42) filed by Defendants Jerry L. Demings, in his capacity as Sheriff of Orange County, Florida, (the "Sheriff's Dept.") and Orange County Sheriff's Deputy Gerald Cavis ("Deputy Cavis" or "Cavis"); and the Response (Doc. 46) filed by Plaintiff Nereyda Frias ("Frias").

**I. Background**

Except where noted, the following facts are undisputed. In 2009, Frias lived in Orange County with her boyfriend, Alex Isurieta ("Izurieta") and his two children, a sixteen year old son ("John Alex") and a thirteen year old son ("Cristian"). In the first week of July, 2009, Izurieta's father was visiting from out of state. On the day he was scheduled to leave, Frias returned home from work to take him to the airport and was informed that John Alex was leaving as well.[1] Frias did not consider

---

[1] John Alex also told Frias that he had spoken to both his father (Izurieta) and his mother about his intent to leave with his grandfather.

this to be unusual because John Alex had lived with his grandfather for a period of time. She took the two to the airport, returned home and went to bed. Several hours later she was awoken by Cristian and Izurieta who were both curious about the whereabouts of John Alex. It is now clear that Izurieta did not know that John Alex was leaving, nor would he have approved. Izurieta's father had in fact, taken John Alex without permission. Izurieta quickly called 911 and informed the dispatcher that his son had been taken without permission by his grandfather, and that they may still be at the airport. By the time Deputy Cavis arrived at the house,[2] Frias and Cristian were sitting outside crying. Izurieta informed Cavis of the situation, that his father had taken John Alex, and that they may still be at the airport, but at no time did he actually blame Frias for these events. Cavis then turned to Frias and asked if she would answer a few questions, but Frias speaks only Spanish and Cavis speaks only English.[3] Rather than respond to Deputy Cavis, she began yelling at Izurieta in Spanish, never responding to Deputy Cavis's repeated attempts at questioning.[4] After a few moments of shouting, Frias turned to go back into the apartment.

The parties dispute what happened next. Frias claims that she and Cristian walked arm-in-arm past the deputy, and through the front door of the apartment.[5] Just as she was going through the door, she heard Cavis say "Police, Stop," but at that point, she was already inside. Deputy Cavis followed

---

[2] Apparently, no deputy was ever sent to the airport.

[3] Frias admits, however, that she understood Cavis's request.

[4] In her deposition, Frias says, "it's as if he [Deputy Cavis] wasn't there, I never directed any of my answers to him, only to [Izurieta]." (Doc. 42, at 4).

[5] She also claims that Cavis did not actually block her path. Rather, there was a distance of at about three feet between them at the closest point. (Doc. 42, at 4).

-2-

her, and as she entered the apartment, the door closed quickly behind her as if it had been slammed. Apparently upset at Frias's refusal to cooperate, Cavis pursued her into the house and confronted her in the kitchen where she was getting a glass of water. Cavis asked her "are you going to hit me with that glass?"[6] Before Frais could respond, he grabbed her arms, handcuffed her, and took her outside to his patrol car. Deputy Cavis's recollection of events is slightly different. He recalls that Frias "had an aggressive demeanor because she was speaking loadly and she was using hand gestures in an aggressive manner." (Doc. 42, at 7). Further, when Frias turned to go inside the house, she intentionally bumped him with her shoulder on his side as she passed, even though there was plenty of space to pass on the other side. Cavis told her several times in Spanish, "Police, Stop," but she picked up speed and ran inside the house. He decided to follow her into the house after she attempted to slam the door in his face. When he reached the kitchen, he saw Frias visibly angry, and reaching into the refrigerator. Before he could tell what she was reaching for, Deputy Cavis handcuffed Frias and took her outside.

Frias filed suit in November, 2009, alleging, *inter alia*, a violation of her civil rights under § 1983 for the arrest and warrantless entry into her home, and intentional infliction of emotional distress. The Sheriff's Dept. and Deputy Cavis now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**II. Standards**

    **A. Summary Judgment**

A party is entitled to summary judgment when it can show that there is no genuine

---

[6] The exact wording is unclear.

issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1351-52 (M.D. Fla. 2003). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324-25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

**B. False Arrest**

Under the Fourth Amendment, an individual has a right to be free from "unreasonable searches and seizures." U.S. CONST. amend. IV. An arrest is a seizure of the person. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007). A warrantless arrest without probable cause violates the Constitution and provides a basis for a Section 1983 claim, but the existence of probable cause at the time of the arrest constitutes an absolute bar to a Section 1983 action for false arrest. *Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009). In addition, qualified immunity protects officers who reasonably but mistakenly conclude that probable cause is present. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009). Whether a particular set of facts gives rise to probable cause or arguable cause for arrest depends on the elements of the crime. *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004). Where the facts are undisputed, whether probable cause existed is a question of law. *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990).

**C. Warrantless Entry**

The Fourth Amendment also protects an individual's home from warrantless entry. *United States v. Walker*, 390 Fed. App'x 854, 857 (11th Cir. 2010). "In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." *Payton v. New York*, 445 U.S. 573, 589 (1980). Accordingly, a warrantless search of a person's home is presumptively unreasonable. *United States v. Ramirez-Chilel*, 289 F.3d 744, 751 (11th Cir. 2002). However, where law enforcement officers have probable cause to search, exigent circumstances may justify a warrantless intrusion into a home. *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (en banc). The government bears the burden of proving that the officers had both probable cause and that there was exigency. *United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002); *see also United States v. Standridge*, 810 F.2d 1034, 1037 (11th Cir.1987); *Washington v. Toebeck*,

2011 WL 2555752 at *1-*2 (11th Cir. 2011). Furthermore, "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed." *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984).

### D. Municipal Liability

A suit against a government official in their official capacity is treated as a suit against a municipality. *Kentucky v. Graham*, 473 U.S. 159 (1985); *Palmer v. Johnson*, 2011 WL 307620 at *7 (M.D. Fla. 2011). Once a Constitutional violation is established, a plaintiff may be able to hold a municipality liable under certain circumstances. In *Monell v. Dept. of Soc. Servs. of New York*, the Supreme Court rejected the proposition that municipalities can be held liable under the doctrine of *respondeat superior*. 436 U.S. 658, 694 (1978). Instead, a Plaintiff is required to show that the Constitutional injury alleged was the result of a custom or policy. *Id.* Where no stated policy exists, a Plaintiff must show that there was a pattern of deliberate indifference that is "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997); *see also Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310-11 (11th Cir. 2011). As a final alternative, a custom or policy may be inferred from a single decision, or ratification of a subordinate's decision, by the highest officials responsible for setting policy. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988).

### E. Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982). Qualified immunity is an immunity from suit rather than a mere defense to liability, and it is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Unless the plaintiff's allegations state a claim of violation of a clearly established constitutional right, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001). Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in question in fact committed those acts. *Mitchell*, 472 U.S. at 526.

To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). Once the defendants establish this, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate. *Id.* The Supreme Court has established a two-part test to determine whether qualified immunity should apply. The court must determine whether plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). This requires the court to determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right. *Gonzalez*, 325 F.3d at 1234. The second prong of the test requires the court to determine whether the right was "clearly established." *Id.* Although it will often be appropriate to consider whether a constitutional violation has been alleged before assessing whether the right at issue is clearly established, the two determinations may be made in either order. *Pearson v. Callahan*, 555 U.S. 223 (2009).

**III. Analysis**

Within Counts I and II, Plaintiff asserts two claims for violations of her Fourth Amendment rights against both Defendants – one for false arrest, and the other for warrantless entry into her residence. Count III alleges intentional infliction of emotional distress against Deputy Cavis only. Nowhere does the Plaintiff allege that the Sheriff's Dept. had a custom or policy in place, that it ratified the acts of Deputy Cavis, or that it was negligent in hiring or training. Therefore, the Sheriff's Dept. is entitled to summary judgment on all counts. The remaining claims against Deputy Cavis are discussed in turn.

**A. Section 1983 False Arrest**

Frias does not dispute that Cavis was acting within his discretionary authority as a deputy sheriff during the events at issue in this suit. Thus, the burden shifts to the Plaintiff to show that qualified immunity is not appropriate. Frias argues that Cavis had no probable cause to arrest her for obstruction because she had a right to walk away. (Doc. 46 at 15). Additionally, Cavis had no right to conduct an "investigative stop" because Frias was never a suspect in the "taking"[7] of John Alex.

Cavis argues that he had probable cause to arrest Frias based on Florida Statute § 843.02 which states, in relevant part, "[w]hoever shall resist, obstruct, or oppose any officer . . . shall be guilty of a misdemeanor in the first degree." Florida courts have said, "[t]o support a conviction under section 843.02, the state must show: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that lawful duty." *R.E.D. v. State*, 903 So.2d 206, 207 (Fla. 3d DCA 2004). In the context of qualified immunity the question is

---

[7] The Court notes that this was technically not a case of "kidnapping" because John Alex was over the age of 13 and there was no force or felonious intent involved. *See* FLA. STAT. § 787.01. Instead, the violation here was most likely "Interference with Custody." FLA. STAT. § 787.03. However, for the sake of brevity, the Court will refer to the incident as a "taking."

not whether probable cause actually existed, but rather, whether the officer "reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Garczynski*, 573 F.3d at 1167 (citing *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997).

Cavis argues that he was engaged in the "legal duty" of investigating what happened to John Alex. (Doc. 42 at 13). He contends that the basis of this legal duty was § 901.151 of the Florida Statutes. *Id*. § 901.151 is Florida's "Stop and Frisk" law. It provides officers the authority to temporarily detain "any person under the circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state . . ." But, Frias was not a suspect and Cavis, therefore, had no authority to detain her under § 901.151.[8]

The only other argument that Defendants could make is that Frias violated some duty to speak to Cavis. However, they cite no authority for the proposition that a person, not suspected of any criminal violation, has a duty to answer an officer's questions. Nevertheless, Cavis argues that Frias's refusal to cooperate constitutes "obstruction." Florida courts have found that words alone may constitute obstruction only in three rare situations: when an officer is (1) serving process; (2) legally detaining a person; or (3) asking a person for assistance with an ongoing emergency that presents a serious threat of imminent harm to person or property. *D.G.*, 661 So.2d at 76. However, no Florida court has found probable cause to arrest a person for obstruction solely on the basis of a refusal to

---

[8] In his deposition, Cavis states that when he approached Frias, "she was not a suspect or anything like that." (Doc. 43-2, at 23). Moreover, the facts do not support the conclusion that Cavis "reasonably could have believed" that Frias was responsible for taking John Alex because, *inter alia*, Izrieta told him that she was not involved. (Doc. 42, at 8).

-9-

answer questions related to an ongoing investigation.[9]  Rather, obstruction cases always involve physical conduct, or what amounts to "fighting words."  *See, e.g, Francis v. State*, 736 So.2d 97, 99 (Fla. 4th DCA 1999) (holding that defendant's actions of physically blocking the officer's path to investigate a beating in another room constituted obstruction under § 843.02); *Wilkerson v. State*, 556 So.2d 453, 456 (Fla. 1st DCA 1990) (probable cause existed where defendant deliberately interrupted a police search of drug dealers and customers by yelling, cursing at the officers, and generating a crowd, in a dangerous area known for drug activity).  *But see J.G.D. v. State*, 724 So.2d 711, 712 (Fla. 3d DCA 1999) (finding no probable cause where defendant's "loud and profane" protests facilitated the gathering of an "unruly crowd").  Frias's actions were completely different from the profane protests in the common obstruction case because she said nothing to Cavis.  Her comments were directed solely at Izurieta.

Most significantly though, Frias had no obligation to address Cavis at all.  Plaintiff points out that in a consensual encounter like the one here, a person has no duty to talk to the police, and can in fact, merely walk away.  *See United States v. Mendenhall*, 446 U.S. 544 556 (1980); *Florida v. Royer*, 460 U.S. 491, 498 (1983).  To hold Frias liable for obstructing a police investigation is to say that she was not free to ignore Deputy Cavis and walk away, because in doing so, she was in violation of a Florida statute.  Such a reading of § 843.02 would violate the Fourth Amendment.  Accordingly, the Court finds that Cavis did not have arguable probable cause to arrest Frias.

The second step in determining whether qualified immunity applies is whether the law was "clearly established."  *Gonzalez*, 325 F.3d at 1234.  "For qualified immunity to be surrendered,

---

[9] Some courts have noted that this may present a First Amendment issue.  *See S.D. v. State*, 627 So.2d 1261, 1262 (Fla 3d DCA 1993).

pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821 (11th Cir. 1997) (quoting *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir.1994) (en banc)). This determination is a difficult one, and is based on an objective determination of what the officer knew at the time of the alleged violation. *Anderson v. Creighton*, 483 U.S. 635 (1987). Plaintiffs may point to either "(1) earlier case law from the Supreme Court, [the Eleventh Circuit], or the highest court of the pertinent state that is materially similar to the current case and therefore provided clear notice of the violation or (2) general rules of law from a federal constitutional or statutory provision or earlier case law that applied with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of Defendants' conduct." *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007) (citing *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1031-33 (11th Cir. 2001) (en banc))

Plaintiff argues that the law was clearly established based on the Fourth Amendment itself, and on Supreme Court case law which has consistently held that a person "may not be detained, even momentarily without reasonable, objective grounds for doing so." *Florida v. Royer*, 460 U.S. 491, 498 (1983) (citing *United States v. Mendenhall*, 446 U.S. 544 556 (1980)). In this case, Frias argues, there was no evidence of wrongdoing other than Frias's refusal to talk to the police. Since she had a legal right to ignore the Deputy and walk away, those acts cannot constitute the sole basis for arrest. Cavis admits that she was not a suspect prior to the alleged "obstruction." Therefore, the Court agrees with the Plaintiff and finds that the law was clearly established at the time of the arrest. Thus, Cavis is not entitled to qualified immunity and his Motion for Summary Judgment as to Count II will be denied.

**B. Section 1983 Warrantless Entry**

An officer may enter a residence without a warrant only when the officer has both probable cause and there was exigency. *United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir.2002). Cavis did not have probable cause to arrest Frias for a violation of Florida Statute § 843.02, and he points to no other justification for his entrance. Even if probable cause existed, however, Plaintiff argues that there was no exigency. Defendants cite *Standridge* for the proposition that "hot pursuit" of a suspect is a sufficient exigency. 810 F.2d at 1037.

The Supreme Court has said that the "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed." *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984). *Standridge* clearly requires further inquiry into the severity of the suspected offense before "hot pursuit" is considered an exigency. 810 F.2d 1034, 1037 (11th Cir.1987) (stating five factors which indicate the existence of exigent circumstances: "(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) a reasonable belief that the suspect is armed; (3) probable cause to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or jeopardize the safety of officers or the public"). In *Standridge*, an exigency existed where an armed bank robber fled into a motel room. Entry was justified because the suspect might "dispose of the stolen cash or other evidence" and "any delay increased the risk that innocent members of the public might be injured if [the suspect] attempted to leave to motel." *Id*.

In this case, Frias was not armed; the crime she was suspected of committing (obstruction of a police investigation) was non-violent;[10] there was no reason to believe she would flee; there was no evidence that might have been destroyed; and there was no other reason for Deputy Cavis to enter her apartment. Therefore, even if Cavis had probable cause, there was no exigency to justify a warrantless entry into Frias's residence.

Next, Plaintiff must show that the law was clearly established. To do so, Frias cites the Fourth Amendment and Supreme Court precedent which states, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445, U.S. 573, 585-86 (1980). In this case, the law on warrantless entry into a home is clear that there must be an exigency. *Washington v. Toebeck*, 2011 WL 2555752 at *1-*2 (11th Cir. 2011)*; United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir.2002); *United States v. Standridge*, 810 F.2d 1034, 1037 (11th Cir.1987); *see also Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984). Elaborating on the exigency requirement, the Supreme Court stated in 1984 that warrantless entry should "rarely" be sanctioned in the case of minor offenses, and the Eleventh Circuit elaborated shortly after with a five part test which focuses on the violent nature of the crime, and the immediate danger to the public. *Welsh*, 466 U.S. 740; *Standridge*, 810 F.2d at 1037.

In this case, Frias was only suspected of "obstructing" a police investigation. She was not the target of the underlying investigation, and Cavis points to no specific information that he intended to elicit from Frias. Nor was there any reason for Cavis to suspect that she was a danger to anyone, that she was hiding evidence, or that she would flee. Accordingly, the Court finds that a reasonable officer

---

[10] Cavis admits that Frias was not a suspect in the taking of John Alex. (Doc. 43-2, at 23); *see supra* note 8.

should have known that his conduct was unlawful because there was absolutely no exigency. *See Toebeck*, 2011 WL 2555752 at *2 (holding "the law was clearly established at the time of the incident that, with such a clear absence of exigent circumstances, Defendants' arrest of Plaintiff in his home violated his Fourth Amendment rights" where Defendants were suspected of violating a noise ordinance). Thus, Deputy Cavis's Motion for Summary Judgment as to Count I will be denied.

### C. Intentional Infliction of Emotional Distress

In Florida, the tort of intentional infliction of emotional distress requires the Plaintiff to prove the following elements: (1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior and he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *LeGrande v. Emmanuel*, 889 So.2d 991, 994 (Fla. 3d DCA 2004). "Whether alleged conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a matter of law, not a question of fact." *Gandy v. Trans World Computer Tech. Grp.*, 787 So.2d 116, 119 (Fla. 2d DCA. 2001) (citing *Ponton v. Scarfone*, 468 So.2d 1009 (Fla. 2d DCA 1985)). This is an objective question, the subjective response of the victim does not control. *Liberty Mut. Ins. Co. v. Steadman*, 968 So.2d 592, 595 (Fla. 2d DCA 2007). Florida courts use a very high standard in evaluating whether the facts alleged are sufficiently outrageous, requiring that the conduct be "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So.2d 277, 278-279 (Fla. 1985) (quoting Restatement (Second) of Torts § 46 (1965)); *see also* Foreman v. City of Port St. Lucie, 294 Fed. App'x 554 (11th Cir. 2008) (applying Florida law, an officer pointing an unloaded

BB gun at a person and pulling the trigger not sufficiently outrageous). In regards to severity, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." Restatement (Second) of Torts § 46, cmt. j (1965).

In this case, Frias has not established a claim for intentional infliction of emotion distress because she has not shown that Deputy Cavis's conduct was "beyond all possible bounds of decency" or that she suffered "severe distress." While being subject to false arrest is embarrassing, it is not sufficiently extreme and outrageous absent some other grievous conduct. Frias contends that the fact that she was wearing only a towel at the time of arrest adds to the outrageous nature of the conduct. But it is impossible to see how this could add to the embarrassment given that she was sitting outside wearing only a towel prior to Cavis's arrival. Finally, she provides no evidence regarding the emotional distress which resulted from this incident. Accordingly, Deputy Cavis is entitled to summary judgment as to Count III.

## IV. Conclusion

Frias's actions in this case should not be condoned. Deputy Cavis was merely trying to obtain as much relevant information as he could under the circumstances, and Frias should have been willing to help. Instead, she deliberately ignored him, shouted at her boyfriend, and stormed off. From a Constitutional perspective though, what Frias "should" have done is irrelevant. She had the right to ignore Deputy Cavis and walk away. Cavis was understandably upset at the situation, but that does not give him the right to arrest her. Although section 843.02 of the Florida Statutes is necessary to ensure that an officer is able to carry out his or her job, it has its limits. It cannot be used justify the arrest of a person, not suspected of any wrongdoing, who merely ignored an officer and walked away.

In light of the foregoing, it is **ORDERED** that Defendants' Motion for Summary Judgment (Doc. 42) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. In regards to Defendant Jerry L. Demings, in his capacity as Sheriff of Orange County, Florida, Summary Judgment is **GRANTED** as to all Counts in the Amended Complaint;

2. In regards to Defendant Gerald Cavis, Summary Judgement is **DENIED** as to Counts I and II, but **GRANTED** as to Count III.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 14, 2011.

Copies furnished to:

Counsel of Record
Unrepresented Party

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**